Case number 18-1391, Wilbern Cooper v. Willis Chapman. Oral argument is not to exceed 15 minutes per side. Ms. Leschinsky for the appellant. Yes. You may proceed. Good afternoon and may it please the Court. This is Amy Leschinsky with the law firm Wilmer Cutler Pickering Hale & Dorr, here today representing Petitioner Wilbern Cooper. I'd like to reserve two minutes for rebuttal. Fine. Cooper was... Thank you. Cooper was convicted of first-degree felony murder by a Michigan jury in 2011. The course of Cooper's trial took a sharp turn when the prosecutor decided to introduce a confession that nobody here disputes was inadmissible. So to begin, there's no question that the admission of the third custodial statement violated Cooper's Fifth Amendment rights. The warden has not contested that issue before this Court, and so that leaves just two issues for this Court to decide. First, you know, was Cooper's Fifth Amendment claim procedurally defaulted? And second, was the admission of Cooper's confession harmless? And the answer to both of these questions is no. So taking them up in that order, the warden argues, and the Michigan Court of Appeals held, that Cooper is procedurally barred from presenting this argument. But that's wrong. The key question is whether Cooper was on notice that, notwithstanding his timely objection in the form of a pretrial motion to suppress, he could waive his right to challenge the admission of the confession via a single, inartfully worded question. And the answer is, of course not. There is absolutely no precedent that could have put Cooper on notice that defense counsel's questioning could waive his Fifth Amendment claim. We haven't found any, and certainly neither the Michigan Court of Appeals nor the warden has pointed to any. One thing that is abundantly clear is that the invited – Could an – this is Judge Moore – could an artfully worded question constitute invited error and waiver? No, Your Honor. Under People v. Jones, the question is whether the error was brought about by, you know, is directly attributable to the complaining party's conduct. And so invited error doctrine applies where a party complains of something that they affirmatively sought. So, for instance, you know, if a party requests a jury instruction and then complains about it on appeal, that's going to be barred by invited error, and that's very well established. And so – but that has no application to the facts of this case. Cooper did not ask to introduce the confession. In fact, he moved to suppress it. It was the prosecution's choice to. Ms. Lachinsky? Yes. Ms. Lachinsky? Hi, this is Judge Kethledge. You would agree, though, that the invited error doctrine could apply if a party opened the door to testimony that would otherwise not be admissible, correct? So I think Michigan law is a little bit complicated on this point. They have sort of three interrelated doctrines of invited error, invited response, fair response. And People v. Jones discusses this. But the only doctrine that's been put forth here, either by the warden or by the Michigan Court of Appeals, is the invited error doctrine. And that applies only where a party affirmatively seeks to introduce the testimony, which clearly is not what happened here. But I do agree with the premise of your question, which is that if, you know, as in People v. Jones, if the party was, you know, doing something strategic, you know, seeking to introduce something sort of covertly, that that could implicate a different doctrine, but it wouldn't implicate invited error. Well, I guess still on that point, I mean, if we look at that transcript of the exchange that, where the defense counsel is asking or asks what the detective may be, whether Cooper had ever opened up, where actually I think he phrased it in a way that Cooper had never opened up, right, about what happened in the house. I mean, it seems like the point of that question is rather plainly to leave the jury with the impression that Cooper, in fact, had not admitted what he admitted in the third interview. And so I guess, you know, just to give you my concern about your argument, that seems to be rather clearly inviting a correction of the misimpression that counsel sought to leave. So I think that I don't think, we don't think that's the best reading of the record. And, you know, the counsel was talking through the first couple non-custodial interviews, and I think when you read that exchange in the broader context, it's clear that counsel did not mean to invoke all of the interviews. But it actually, it doesn't matter, because those are, what you just recited, those are the facts of Jones. In Jones, the key, one of the prosecutions. But, I mean, counsel was trying to, granted, I mean, counsel was probably thinking of the second interview, but to leave an impression with the jury that he did not open up in the second interview and stop there, obviously would be misleading with respect to whether he had opened up at all. I mean, the question, you know, isn't whether he said something in the second interview. I think fairly one could read that transcript to mean that counsel was trying to leave an impression that he hadn't opened up at all, and maybe was doing that because the prosecution had assured counsel that they would not use the third interview. So, I mean, it does seem like he was trying to, I mean, that's my concern, is it seems like he was trying to leave an impression that was contrary to the record in the case. So, that is exactly what happened in Jones. In Jones, the key prosecution witness, whose name was also Jones, had undergone a polygraph examination, and everyone knew and understood that the testimony about that was not admissible. Yet, nonetheless, defense counsel asked the prosecution witness, did you undergo a polygraph examination? And the witness answered yes before anyone could object, and it stopped there. And the Michigan Supreme Court noted, like, this left an impression that the witness had failed the examination, which wasn't true. The witness had passed, but, you know, it stopped there. And so there was a misleading impression left. And so then the prosecutor the next day got up at trial and said, did you pass your polygraph? And the witness said yes. And the Michigan Supreme Court specifically considered whether that constituted an invited error. Did the earlier questions, which were in that case specifically designed to leave this misleading impression, did that invite the error of the later prosecutor question, you know, delving further into the subject? And the court held no. That's not invited error. And this is in footnote 6 of people's ‑‑ it's in the text and then in footnote 6 of people v. Jones. And the court says, you know, invited error, the quoting here from the footnote, invited error is typically said to occur when a party's own affirmative conduct directly causes the error. And the court goes on to say that, you know, to the contrary, in this case, the alleged error was not directly attributable to the affirmative conduct of a defendant, and the defendant cannot be said to have waived the alleged error for appellate review. And so, you know, that case is directly on point. And I think that's what's, you know, particularly striking about this case is that we don't just have a dearth of authority. It's not just that, you know, no Michigan court had ever applied invited error in this doctrine. We have an on point case binding Michigan precedents saying this is not how invited error works. You don't apply it where the other party introduces evidence. You only apply it where the complaining party introduced the evidence. And so because People v. Jones is precisely on point, and I should note, you know, that the warden appears to admit that in his brief at the top of page 27. Because People v. Jones is directly on point, the error is not waived for federal review. And so the United States Supreme Court has explained that, you know, where a state ruling cannot be reconciled with past unambiguous holdings, it cannot defeat federal review. And so that's the rule of NAACP v. Alabama. So in that case, the Alabama Supreme Court refused to consider a challenge because it held it should have been brought via Mendamus rather than certiorari. And because the United States Supreme Court found that that holding conflicted with the Alabama court's prior precedent, federal review was not precluded. And so this court's precedent is, you know, unsurprisingly to the same effect. In White v. Mitchell, Ohio had applied a procedural default rule that this court found was inapplicable, quote, by its own terms. And so this court thus preceded the merits. And Hartman v. Bagley and Hill v. Mitchell are to the same effect. Riddle v. Berry is also on point. There the court explains that since no, I think in that case it was Kentucky, no state's case had ever construed the relevant rule in the manner that it was applied in the petitioner's case. The petitioner was not on notice of the rule, and so review could proceed. So there are many cases, those that I've just cited, and more supporting this rule, but it's actually a very simple concept. Where a state applies a rule in a way that's unforeseen at the time of trial, it's not a bar to federal review in federal court. And so, you know, Cooper could not have been on notice at the time of his trial, but defense counsel's questioning would waive, you know, any Fifth Amendment objection that he had preserved, you know, pre-trial with a motion. He could not have been on notice of that, and so it cannot bar his Fifth Amendment claim. And the warden has not provided any reason to deviate from this precedent. The warden, you know, can't point to a single case other than this one, where the prosecution's introduction of a statement that defense counsel had moved to suppress pre-trial was deemed invited error. And he can't do that because it doesn't make sense. It doesn't make sense under invited error doctrine, and it conflicts with Jones. There's simply no coherent line to be drawn between this case and Jones. And so for the reasons, you know, as this court explained in Hodge v. Haberlin, where a state bars collateral review of a claim actually preserved by the petitioner, such a bar will not constitute procedural default on federal review. And so for those reasons, the court should proceed to the merits. Turning to harmlessness. There is some back and forth in the brief about the correct standard. It's quite clear that the standard to be applied here is Brecht and that there's no need to go beyond that. I'm happy to answer any questions about that to the extent the court has any. But if not, you know, applying the Brecht test, the question is not whether excluding the erroneously admitted evidence. Counsel, this is Judge Bush. Do you agree that there is some deference we pay under AEDPA to the harmless error review of the state court? So I think that the deference is baked into the Brecht standard. You know, in Brecht, the Supreme Court is considering whether the harmlessness standard should just be strictly just Chapman or should it be a different test. And the reason the court imported the Kotioko standard in via Brecht was to bake in that deference. And, you know, the Supreme Court and this court have said multiple times that the deference is subsumed in the Brecht test and there's no need for the court to go beyond it and apply a second test. And so this court, you know, said that recently in O'Neill. And I actually just last week in a case called Rayner reaffirmed that. That's Rayner v. Woods, number 18-14-13, just again said that in the Sixth Circuit on habeas review, we always apply Brecht and need not also apply AEDPA slash Chapman. So it's just there's one simple test that has the deference sort of baked into it. And did the Michigan Court of Appeals decide on harmless error on this third confession anyway? It did not. So there's really three reasons why harmlessness should come out in favor of my client. So first, the Michigan Court of Appeals never reached a harmlessness finding with regard to the third custodial interview. The court was considering each statement in turn and the harmlessness finding that the warden's sites applied only to the second statement. And this is the second custodial statement. And this is clear because in the third custodial, when considering the third custodial statement, the court found that appellate review was precluded. Second, as I just explained, under O'Neill and Rayner, it's clear that the court only applies Brecht. And third, you know, whether the court applies Brecht or Chapman plus AEDPA, you know, we think under Moore and Edelman, release is warranted under either standard. I see that my time is expiring, so I will reserve my time for rebuttal. Certainly. Thank you. Thank you. Mr. Pallas. Yes, good afternoon, Your Honors. May it please the Court, my name is John Pallas, Assistant Attorney General from the State of Michigan, Representative Warden Willis Chapman in this case. My path today is going to look like this. I'm going to touch on the issue of invited error and procedural default initially. I am then in short order going to move on to discuss harmless error. I think this court can, if it wishes, avoid addressing the default argument by simply ruling whether any error in this case was harmless. We're certainly not conceding that point, but it is one way of approaching this case. Certainly, if this court sees this case otherwise and would like me to address things differently or simply answer questions, I will be happy to do so. Well, Mr. Pallas, this is Judge Kaplan. When you address the question of invited error, I would be interested to hear your response to Ms. Lachinsky's argument that Jones is contrary to the Michigan Court of Appeals decision here, precisely because there was a similar misimpression in Jones and that was, nonetheless, not invited error. Well, I think I'll start with that then, Judge Kuflage, in terms of Jones, which I was going to talk about. People do read Jones. That's the case that Cooper says supports his point, but we believe it actually supports the state's. And I think the difference and the result, anyway, in that case has to do with the fact that both the defense counsel and the prosecutor strayed into an area which is unequivocally off limits under Michigan law, and that's referencing preliminary examinations. I think here the fact that the trial court had ruled that the third custodial statement was admissible, even though the prosecutor, being ultra-careful in this situation, said he wasn't planning on using that statement, unless Cooper took the stand and contradicted something on it. I think one of the big differences in the results and how these two cases turned out is because here the prosecutor was acting in good faith. He was not trying to bring in something that had been ruled inadmissible or was known to be inadmissible under Michigan law, as what happened in Jones. And so I think, frankly, Jones doesn't hurt us and may even actually help us a little bit. Does Jones invoke good faith as a factor in the invited error analysis? Well, it does implicitly because there's mention in the opinion of the fact that there was references by both parties to something that should absolutely never have come in and that, frankly, the other difference is that at the time that this initially happened, where the defense counsel asked the question to the witness about having taken a polygraph, there was an objection by the prosecutor. The judge offered limiting instructions. Both of them turned it down, and then the prosecutor turned around and asked the question, pretty much tried to get the answer that the witness hadn't given previously. So I think there's a different tone to it, a different feel to it. I mean, here, the state trial court had said that statement, all of those statements were admissible. So the prosecutor, again, being ultra careful, just said, look, I don't plan on introducing that third statement in particular unless the defendant takes a stand and contradicts it. So I think while there isn't an explicit good faith basis, I think certainly when you look at the result in Jones, I think the result of that was largely driven by the fact they were both straying into something under Michigan law that anybody who does criminal practice in Michigan knows that that is a big no-no. You stay away from that, ideally. Well, I mean, but you don't dispute that the confession was inadmissible here, right? I mean, I don't see you disputing the Fifth Amendment violation. I don't. So isn't this – how do you distinguish this case, then? Is it just some subjective thing, whether the prosecutor was doing something, you know, knowingly bad? Because in neither case is the testimony otherwise admissible. That's correct, except that at the time that he introduced it, the trial court had already said it was admissible. Now, that ultimately was not the case when looking at it. I think from an honest perspective, and I'm not going to – I was going to say stand before all of you and say this, but I'd say this over the telephone, that I don't believe this was a statement, given all the multiple times that this prisoner invoked his right to silence and kept saying, I don't want to talk, I don't want to talk, I don't want to talk. I just think this is a situation that is different from Jones, and the prosecutor, you know, for whatever reason, must have thought, gee, I won that motion, but maybe I shouldn't have, and maybe in order to make sure there isn't an appellate issue on appeal, I'm not going to bring it up unless the defendant takes a stand and denies something he said or something contradictory is said. So, again, it may not be explicit, but just kind of looking at the tone of the Jones opinion, it does appear to be something that seemed to be held against both of them, frankly, in the Jones case, whereas here, you know, you have a prosecutor who wasn't going to go anywhere near that topic originally, and then I think, as Judge Moore said, and I do believe an inartfully stated question can be the basis for invited error. It doesn't have to be both. Getting to that point, looking at the transcript of what was said, doesn't it seem clear that the defense lawyer was talking about the March 2 interview and asked the question about, let me just finish for a second, and then when the answer was, no, as a matter of fact, he did, the lawyer immediately says, when you had this interview, obviously trying to get back to the feature that they were talking about, the March 2 interview, and then the next question, during this interview, did he tell you he was inside? Yes. So why couldn't and shouldn't this be viewed as, at most, a slip of the tongue of the defense lawyer without having a qualifier the first time the question was asked, but then the qualifier is added twice during this interview, talking about the March 2 interview? Well, Judge Moore, I think that's a good question, and thank you for asking it because I was going to discuss this. I think you have to focus on the very initial part of that colloquy, where the question from the prosecutor is, and you did that in order to get him to admit to something that he didn't do, question, answer. I was trying to get him to open up further about his involvement in the case, in the incident, excuse me. Then here's the line that I think really causes the problem here. The next question is, he never did that, did he? And then the officer responds, no, as a matter of fact, he did. The never did that, I think, without, now later on, I do agree with you, Judge Moore, he did try to pull back and say, oh, wait a minute, no, I'm really just talking about the second interview. This is the March 2 interview, the second custodial statement, as I like to call it. But I think that question, he never did that, did he, is just like the defendant saying, well, I never said that or I have never said anything about being in the house or something. I mean, that to me is where the problem is. And I think the counsel may have very well realized that he had strayed into something that maybe he, it was problematic, and it was. It may have been inadvertent, but I think as one of the judges, when Ms. Lushinsky was speaking, noted it was going to leave the impression with the jury that he hadn't opened up further, that there wasn't something more, that this was it. Do you have a case, excuse me, do you have a case from either the Michigan Supreme Court or the Michigan Court of Appeals that would hold that a lawyer cannot rehabilitate his own inartfully worded question that you would want to recommend that we look at? I don't have such a case, don't judge me. I think this is a very unique situation, and I have to agree with Ms. Lushinsky. This case kind of played out in a certain way. You know, normally they don't always happen this way, and part of my point is, and I know Ms. Lushinsky does a very nice job of talking about, you know, other cases where this is not being applied even-handedly, but what I don't know that it's as much even-handedly as it is they're looking at the facts of each case, and if it doesn't fit invited error, it doesn't fit invited error. And I think that's more the distinguishing factor between a lot of the cases that my opposing counsel cites and this one, and I just think the fact that, you know, you open that door, as one of the judges on the panel said a little bit earlier, by saying he never did that, did he? I just think the damage was done. I mean, he could try to rehabilitate it, but the damage was done. The jury could have been sitting there writing notes saying, oh, my gosh, he said he never talked up, he never said anything further after that point, which counsel knew wasn't the truth, and I'm not impugning it necessarily. But you're assuming that counsel was not trying to ask the question vis-a-vis the March 2 interview. Well, he didn't say that until later, so that tells me that I think he realized he said something that was either intentionally or unintentionally, I have to say, I'll give him the benefit of the doubt, unintentionally not clear. So suppose that what had happened was that the way the cross-exam went, the defense lawyer said, now, Detective Wabe, I want to talk only about the March 2 interview, okay? And Detective Wabe said, fine. And then the transcript was exactly as we have it, he never did that, did he? The counsel had not moved on to the March 3. Would that be invited error in your view? I don't think so. I think that's different. I do think that's different because it just, I think because you have that preparatory comment that's made. Now, look, Officer, if I'm understanding your question, Judge Moore, that the officer prefaces his whole discussion on, look, I'm only talking about this second custodial interview. I'm not talking about anything else. Did he ever during, what he should have said in that question, he never did that, did he, is he never did that during the second custodial interview, did he? Right, and that's what he says the next two times, but I get your point. Yeah, so thank you. It really, I think the phrase even opened the door is kind of what I would call this happening, which is sort of an underpinning related concept to invited error. I mean, this, I don't see this, what happened in this case to be, in fact, any different than when a defendant takes a stand and said, well, I never said to the police that I was inside the home at the time of the murder. If that was the way that this had happened and the prosecutor had admitted the statement, the third statement, I don't know that we'd be here debating this right now. I don't know that there would have been a question about whether that was a proper invocation of the invited error doctrine, and I think invited error, it's not only prevalent and regularly followed and used across the state of Michigan in hundreds of cases, but also across the country. So. Mr. Pallas, this is Judge Bush. Could you go on to discuss the harmless error analysis? First of all, are you in agreement that it's the Brecht standard that we're to apply? And then secondly, what evidence is the state relying upon to say that there's, that if there's error, it was harmless? Thank you, Judge Bush. Thank you for that. I do agree that under the circuit law as it presently stands, Brecht is the standard, and that's the O'Neill case that I cited in my appellee brief. It's very interesting that my opposing counsel brings up the Reiner v. Woods case because on page five, I guess, on the site of that case, we made the exact same argument  while O'Neill was a case that came out of my office, and we made the argument that IELA had kind of changed the framework in terms of what needed to be looked at and what the role of AEDPA was in deciding harmless error questions when the state has actually made an analysis. And the response that the court said, they, of course, said they had to follow O'Neill, but they said also, quote, the state has at least a colorable argument that AEDPA slash Chapman should be applied separately from Brecht. And that was in an opinion that was written by Judge Griffin, and it just came out last week, I believe it is, April 7th. However, O'Neill, I must say, O'Neill is a published decision of this court applying IELA. Yes, and we have to follow it. Yes, and I'm very familiar with that case. Okay, and actually that was going to be my point because I think for the purposes of harmless error, and I see I'm running the clock here, there are so many statements that he made prior to that third statement, both custodial and non-custodial. I just urge the court to look at my brief and see those statements, and the testimony of Mr. Wally was just stunning, and he was credible. I see my time is up, so unless the panel has any further questions, I'll just refrain at this point. Thank you very much. Thank you, Your Honor. Ms. Lashinsky. Thank you. So the first point I would like to make is via Rayner. Counsel quoted from Star Page 5. On Star Page 6, it's actually the very next sentence of Rayner. The court said, the problem for the state is that our precedent forecloses this approach. So I don't really have anything further to say on that. I think it's abundantly clear that the test here is Brecht. I do want to make a couple of points on procedural default very quickly before I talk about harmlessness. And so I think that, you know, while I agree that there may have been other consequences of the inadvertent question, certainly Webby's comment being one, and we don't challenge that, and I think under Michigan law, you know, Webby's comment would have stayed. There's just no way that Cooper could have known that those consequences would include admitting his entire confession that he had moved pretrial to suppress. Nothing in Jones could have put Cooper on notice of that. Jones says that the test is whether it's directly attributable, and there's no reference to good faith. And on the good faith point, the warden has just acknowledged that the prosecutor knew that this confession was inadmissible, and so I don't see how good faith can make any difference between this case and Jones. I would like to discuss harmlessness with my remaining minutes. And so, you know, it's important to remember, you know, the question is not whether there's sufficient evidence to support the verdict once the erroneously admitted evidence is removed. The question is whether the error had substantial influence. And so I think that there are three cases that are particularly important here, Fulminante, Moore, and Edelman. And we discussed Moore and Edelman at length in our brief, and the warden doesn't discuss either of them. But in all three of these cases, you can see that the effect on the trial in, you know, for one thing, the opening and closing statements. I really encourage the court to compare the prosecutor's opening statements on pages 706 to 709 of the record with the closing statement from page 843 to 845, and also the rebuttal statement, which is 852 to 853. The prosecutor is repeatedly invoking the confession and encouraging the jury to review it. I see that my time has expired, and so unless there are any further questions. Thank you very much, both of you. We appreciate your argument, and the case will be submitted.